BEFORE THE THIRD DIVISION, DECEMBER 4, 1952

**No. 56965.**—Louis Weinberg Associates, Inc. v. United States, protest 152096–K (New York).

JOHNSON, Judge:   This action involves a shortage in a case of fur felt hat bodies imported from Italy.   The plaintiff claims, first, that duty was assessed upon a quantity of merchandise in excess of that actually imported and, second, that duties should have been remitted for merchandise short shipped, not landed, or not found.

At the trial, the vice president of the plaintiff testified that as a part of his duties he examined and checked up the contents of case LWAI 161 with the invoiced quantity when delivered by the trucking firm of J. V. McEvoy and found that the case contained $32\frac{19}{12}$ dozen less than called for upon the invoice. Although the case from its outward appearance was in perfect condition, the witness found on opening that it was almost half empty.   The items not contained in the case, according to the witness, were not received in any other case

nor subsequently received. However, upon notifying the shipper, the plaintiff was informed that reimbursement would be made for the invoice value of the hats. Over strenuous objection of Government counsel, a copy of the letter written to the shipper complaining of the shortage and the reply by the shipper were admitted in evidence as collective exhibit 2. The shipper states in part as follows:

We had other complaints from other of our customers. Upon investigation we find that there were some irregularities found. In view of your reputation and our pleasant relationships and what our investigation revealed, we agree to compensate your [sic] for the loss, and reimburse you with the invoice value of these hats.

We regret that above incident has happened and wish to advise that we have spoken to our shipping department, who inform us that there will not be a recurrence in the future.

The memorandum of the collector in his answer to protest was admitted in evidence as exhibit 1. Therein, the collector states that the importer attempted to comply with the customs regulations, but failed to furnish a copy of the claim upon the shipper and the reply received and, therefore, "there has been no full compliance with the regulation covering allowances for shortages out of unexamined cases." In view of the inspector's return of a "good order" permit and the importer's failure to fully satisfy the requirement of the regulations, the claim for allowance was denied by the collector.

A truckman employed by the firm of J. V. McEvoy testified that he was the bonded driver of the truck who transported the case from customs custody; that it was constantly under his personal surveillance and no one tampered with it at any time; and that he delivered it to the Towers bonded warehouse located on 22d Street. The next day he delivered it from the warehouse to the plaintiff's store.

A work sheet containing case numbers written in pencil, 29 of which were checked, included the case in question and indicated, according to the witness, that he delivered such cases on Thursday. It was admitted in evidence as defendant's exhibit A. The witness testified that he had made out exhibit A and that it was in his own handwriting, and the cases noted thereon were transported by him from the pier to the warehouse.

On behalf of the plaintiff, a receipt showing that case numbered 161 was received from the trucking company on August 5, 1947, and a receipt showing that the case addressed to the plaintiff was received from the Towers warehouse were admitted in evidence as collective exhibit 3. The witness testified that in conformity with the foregoing receipts he transported the case from the warehouse to the importer's place of business. Counsel for the Government attempted at length to induce the witness to admit that he personally did not actually transport the case from the warehouse to the importer's store, and introduced in evidence a letter received by the importer from J. V. McEvoy stating that the case in question "was picked up from Towers warehouse on August 5th 1947 by our driver August Melillo and he delivered to your store in the same condition that he received it from the warehouse." The witness testified, however, that August Melillo, who has since died, was not a bonded driver and could not transport bonded merchandise from the customs to a bonded warehouse, and, despite the letter of McEvoy, he was sure that he, and not Melillo, had delivered the case to the importer. He was positive that his statement was true, not only because he knew he delivered the case, but also because he always made the deliveries in the neighborhood of the importer's store, that territory being his regular run. The witness further testified that he was not absent from work during that period for the reason that he had not lost 2 days' work in 18½ years through being absent from his job.

Counsel for the plaintiff contends that the evidence is conclusive that the merchandise claimed to be short had not landed in the United States nor entered into the trade and commerce thereof, citing the cases *F. W. Woolworth Co.* v. *United States*, 22 Cust. Ct. 197, C. D. 1176; *F. M. Jabara & Bros.* v. *United States*, 68 Treas. Dec. 1161, Abstract 32721; and *Raymond & Heller* v. *United States*, 66 Treas. Dec. 574, T. D. 47360.

Counsel for the Government contends, on the other hand, that the presumption of correctness of the collector's action has not been overcome as the plaintiff has failed to make out a *prima facie* case.

In the *Woolworth* case, *supra*, the evidence adduced at the trial established that the case, from which goods were discovered missing upon arrival and examination at the importer's place of business, was under constant supervision of the truck driver from the time it was removed from customs custody until delivered at the importer's warehouse, where it was immediately opened and the contents checked before delivery was accepted. The court held that the goods were not imported.

In the *Raymond & Heller* case, *supra*, the missing rugs there at issue were not discovered to be missing from the bale until after delivery. Upon opening the bale, a cotton pillow and other articles were contained therein rather than the rugs. At the trial, it was established that no one had an opportunity to tamper with the bale from the time it left customs custody until it was opened immediately upon receipt by the importer, when the shortage was discovered, and the court held that there had been a nonimportation of the rugs.

In the case of *F. M. Jabara & Bros.*, *supra*, the case from which goods were found missing was also in apparent good order when received by the importer, but it was established to the satisfaction of the court at the trial of the case that nothing could have been stolen after importation, and it was held that the goods were short at the time of unlading.

From the evidence adduced by the plaintiff in this case, it not only appears that the abstraction of the goods from the case very likely occurred prior to exporting the same from Italy, but also that, after the case had been removed from customs custody until the time it was opened and the shortage discovered, there had been no opportunity for anyone to remove the missing goods therefrom. For the reasons stated, we hold that the 32¹⁰⁄₁₂ dozen felt hat bodies not found in case LWAI 161 were short shipped, and judgment will be entered directing the collector to reliquidate the entry and refund all duties levied and collected upon such 32¹⁰⁄₁₂ dozen hat bodies not found in said case.