**No. 57042.**—Eurasia Import Co., Inc. *v.* United States, protest 173661–K (New York).

Johnson, Judge: This action pertains to the shortage in certain cases of fur felt hat bodies imported from Italy.   The importer claims that there was a non-importation of part of the contents in 4 out of the 10 cases imported; that there was a total of 1,200 fur felt hat bodies missing; and that an allowance in duty should have been made by the collector.

At the trial, five witnesses testified on behalf of the importer: The import manager, the foreman in charge of the shipping and receiving department, and the truck driver, all employed by the importer; and also an employee of the American Export Lines, Inc., the carrier, and the American representative of the shipper.

From the evidence adduced, it appears that nine of the cases of the shipment were carried from the pier to a bonded warehouse; the remaining case was sent to public stores for examination by the appraiser.   Upon reaching the warehouse, all of the cases were delivered.   However, there was a withdrawal order for cases numbered 153 and 154 and those two cases were reloaded by the truck driver and delivered to the importer's place of business.   The truck driver examined all of the cases at the time he loaded them on his truck from the pier.   He found them to be in good condition with no evidence of having been tampered with, and he delivered them to the warehouse in the same condition.   During the trip to the warehouse and from the warehouse to the importer's store, the cases were under his supervision, and the two cases carried to the importer's place of business were delivered in the same condition as received from the pier.   The truck driver testified that he carried all of the importer's merchandise, the exported material as well as the imported; that he is the only truck driver of the firm, and has been in its employ for many years.

The foreman in charge of receiving testified that the cases were opened immediately upon receipt.   Before opening cases numbered 153 and 154, he examined the exterior to determine if they were properly nailed, whether they were intact, and whether the straps of metal were properly nailed thereon.   He found

that there were no marks whatsoever to indicate that the cases had been tampered with. He further stated that these cases were difficult to open because they had three steel strappings which had to be cut with heavy scissors, and then a nail puller was necessary in order to remove the nails. Then, the nails had to be removed from the cover with a nail puller. When the cases were opened, he found that the waterproof covers, which are wrapped entirely around the inside of the cases, were intact. He opened case 153 first and found 9 bundles of 100 hat bodies each and the second case contained 10 bundles of 100 hat bodies each. The bundles of hat bodies were wrapped in paper having a purplish cast, and he found enough paper stuffed in the spaces unoccupied by bundles of hat bodies to fill up the spaces so that the bundles would not shift. In his opinion, there was considerably more of such paper crumpled up and stuffed in the empty spaces than would be necessary to wrap the bundles.

The import manager testified that the foreman called him as soon as he discovered that the cases were not entirely full, as, according to the invoice, there should have been 12 bundles of hat bodies to each case. He also noted that the waterproof paper, brown on one side and black on the other, which lies inside the case, was not torn, and from his inspection, he had reason to believe that the case was in the same condition as shipped from Italy. Upon discovering the shortage, he first contacted the American agent of the shipper, reporting the shortage discovered in the two cases, and suggested a check of the seven cases still in warehouse. Permission was obtained from the collector and he met the agent at the warehouse. A laborer was assigned to open the cases in their presence and in the presence of the storekeeper.

Prior to opening, the outer packing was examined, and the cases were found to be in good order with no broken boards or steel bands and there were no nails missing. With a little difficulty, the laborer opened the cases and out of the seven cases in warehouse, shortages were noted in cases 150 and 151. In examining those two cases, the waterproof lining, which was brown on one side and black on the other, was found to be intact, not being torn or tampered with in any manner. The bundles of hat bodies in the cases were wrapped with heavy wrapping paper having a purplish cast. Paper of the identical color was found stuffed in place of the hat bodies which were missing in the same manner as in cases 153 and 154.

In case 150, there was a total of 300 hat bodies short, and in case 151 there was a shortage of 400 hat bodies. These shortages were noted by the storekeeper on the reverse side of customs Form 3499, the application granted by the collector to make the examination.

The witness further testified that the 1,200 missing hat bodies were not found in any other cases of the shipment and were not received at any other time; that the shipment was covered by insurance, but nothing was collected because "in order to collect from an insurance company you must have sufficient grounds in order to file a claim. There definitely has to be signs of merchandise having been tampered with or the cases having been tampered with. In this particular instance, since there was no basis for filing a claim with the insurance company we dispensed with that formality." A claim, however, was filed with the steamship company but denied because the merchandise was picked up in apparently good order and no notations were made that there were any broken boards in the said cases.

The witness stated that it would not be possible for anyone, even with the proper tools, to remove the bands and to open the cases and remove some of the contents thereof and replace the covers and the bands all in perfect shape, as the tools leave an impression or an indentation around the area worked upon; and that it would not be possible to remove any of the merchandise from a case packed in such a manner by breaking a board without tearing the inner water-

proof wrapper. In his opinion, the goods were removed before the cases were originally closed.

The shipper's representative, at the time of the importation of the merchandise, testified that the importer filed a claim with him for the shortage of 1,200 fur felt hat bodies and that he personally had gone to the warehouse when the cases were examined. The seven cases were opened in his presence. He had examined all of the cases prior to opening and found no broken boards and no evidence of their being tampered with, yet when opened, the shortages were discovered. He also noted that the crumpled paper stuffed in the empty spaces was of exactly the same kind as used to wrap the bundles and that there was a greater quantity of such paper used than would have been necessary to wrap the missing bundles.

The representative of the American Export Lines, Inc., testified that freight charges on merchandise of the character in question would be either on a weight or a measurement basis, but most likely a measurement basis on the particular commodity in question. However, it was the practice of his company, in accepting merchandise for shipment, to accept the weights and the measurements indicated by the shipper unless there is reason for the line to suspect something wrong with it.

All of the regulations attending shortage allowance had been complied with. However, a letter had been received from the foreign shipper denying that there was a shortage at the point of shipment, and the collector disallowed the claim by reason of the shipper's refusal to grant the importer an allowance.

From the evidence adduced in this case, the court is satisfied that it was not reasonably possible for the missing hat bodies to have been removed from the cases after they had been nailed shut and the three steel straps nailed around the cases and sealed, without any showing that the inner wrappings, the waterproof coverings, the cases, or the steel straps had been tampered with.

The court had before it a very similar case involving a shortage of fur felt hat bodies imported from Italy where the merchandise had been extracted from the cases before shipment. In that case, the court held that there was a nonimportation of the goods so far as the missing articles were concerned. See *Louis Weinberg Associates, Inc.* v. *United States*, 29 Cust. Ct. 410, Abstract 56965, and the cases therein cited.

For the reasons stated, we hold that the 1,200 fur felt hat bodies missing from cases 150, 151, 153, and 154 were short-shipped, and judgment will be entered directing the collector to reliquidate the entry and refund all duties levied and collected upon such 1,200 fur felt hat bodies, to wit, 300 not found in case 150; 400 not found in case 151; 300 not found in case 153; and 200 not found in case 154.